**In the Matter of William B. OLSEN.**

No. 29S00–8908–DI–649.

Supreme Court of Indiana.

Dec. 3, 1991.

No appearance for respondent.

Mark A. Jones, Staff Atty., Indianapolis, for Ind. Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent, William B. Olsen, was charged in a complaint for disciplinary action with professional misconduct, namely violating Disciplinary Rule 1–102(A)(4) of the *Code of Professional Responsibility* and Rule 8.4(c) of the superseding *Rules of Professional Conduct for Attorneys at Law.*

After notice and hearing at which the Respondent failed to appear, the Hearing Officer submitted his findings of fact and conclusions of law with a recommendation for sanction. This Court accepted the Hearing Officer's finding that the Respondent engaged in misconduct involving fraud, deceit and misrepresentation and, on March 14, 1991, suspended the Respondent from the practice of law pending further order.

 The Disciplinary Commission has petitioned for review of the sanction recommended by the Hearing Officer. The issue will be resolved within the scope of this review which involves a *de novo* examination of the Hearing Officer's report, the entire record tendered in the case, and an ultimate determination by this Court as to misconduct and appropriate sanction. See *In re Smith* (1991), Ind., 572 N.E.2d 1280.

 In all other respects, the Hearing Officer's findings of fact are unchallenged. Accordingly, we find that in December of 1986, Forrest McGinnis, Jr. observed a "For Sale" sign on a property located at 888 East 66th Street in Broad Ripple, Marion County, Indiana. The property was subsequently shown to him by an acquaintance of the Respondent who informed McGinnis that the property was owned by the Respondent.

Eventually McGinnis and the Respondent negotiated the sale of the property on contract to McGinnis. McGinnis knew that Respondent was an attorney and that he worked for a title company, Hamilton Title Security, Inc. The Respondent drafted a "Land Contract" which he and McGinnis executed on December 23, 1986. In this contract, the Respondent made specific covenants and warranties including a statement that the Respondent "covenants and agrees to pay, prior to delinquency, all prior real estate taxes ..."; that he warrants that he "has good and merchantable title to the Real Estate, free and clear of any and all liens, leases, restrictions or encumbrances" except for easements and restrictions of record, current real estate taxes not yet delinquent and an existing mortgage; that he represents and warrants that there is no judgment of any court that is or may become a lien on the real estate. Respondent also prepared a "Warranty Deed" which he executed on December 23, 1986.

During their discussions, McGinnis indicated to the Respondent that, although the contract called for complete payment in three years, McGinnis intended to fulfill the terms of the contract in approximately one year and obtain a regular mortgage in that time. The Respondent advised him that at the time he obtains the mortgage, McGinnis would have to obtain a title search costing about $700.00. The Respondent further advised McGinnis that, because of the cost, McGinnis may want to delay the title search until he actually sought to obtain mortgage financing. Accepting Respondent's representations, McGinnis did not request a title search at the time the contract was executed.

Pursuant to the contract, McGinnis paid the Respondent $10,000.00 as down payment on December 23, 1986. Subsequently, McGinnis paid Respondent $8,596.35 toward the purchase of the property pursuant to the terms of the contract.

In October of 1987, Jack Fife approached McGinnis at the property and told McGinnis that he, Fife, was the "new owner." McGinnis learned at that time that Fife had purchased the property at a public tax sale on August 13, 1985, approximately sixteen months prior to Respondent's execution of the land sale contract and Warranty Deed.

The property had been sold to Fife for $6,500, the amount of taxes, penalty, interest, and costs due for the year 1984, and prior years. Fife had received a "Tax Certificate" on August 13, 1985, which he tendered to the Auditor of Marion County, Indiana, on August 24, 1987, and received a Tax Title Deed to the property. On October 15, 1987, Fife satisfied the mortgage which had encumbered the property and recorded his Tax Title Deed.

Contrary to Respondent's affirmative representations, warranties and covenants, prior real estate taxes had not been paid as of the date of the contract with McGinnis nor afterwards, and, in fact, the property had been sold at a tax sale. McGinnis, knowing that Respondent was an attorney and that he worked for a title company, trusted and relied upon Respondent's false representations, warranties and covenants.

After attempting to contact the Respondent without success, McGinnis sought the services of an attorney and filed suit against Respondent. He obtained a default judgment against the Respondent in the amount of $68,737.58. After seeking proceedings supplemental and obtaining an order of garnishment, McGinnis collected only $1,358.20. McGinnis's attorney had to file two more motions for proceedings supplemental because the judgment remained unsatisfied, and the Respondent refused to pay the remainder. McGinnis and the Respondent finally settled the matter for approximately $25,000.00, and, on April 21, 1981, McGinnis, by counsel, filed a "Satisfaction of Judgment." McGinnis agreed to the settlement based upon the advice of his attorney that it was better to settle for this amount than expend untold amounts of time and money in an attempt to collect the remainder of the judgment.

At the time McGinnis discovered that the property was owned by another, he had been remodeling and refitting the property to suit the needs of his business. This resulted in his having to rent the property from Fife at an increased rate of $1000.00 per month. This also necessitated that McGinnis locate another property for his business, make the purchase, and begin the process of remodeling and refitting the new premises.

The findings are clear and convincing that the Respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of D.R. 1–102(A)(4) of the *Code of Professional Responsibility* and Rule 8.4(c) of the superseding *Rules of Professional Conduct.*

Respondent's conduct is abhorrent. Although he did not act in a representative capacity, the fact that Respondent was an attorney with experience in the title insurance field was the pivotal factor which dissuaded the purchaser from seeking the crucial title search at the time of the execution of the contract. Respondent's subsequent refusal to compensate McGinnis for his loss only exacerbates his misconduct. The gravity of this misconduct is an unsavory reflection on Respondent's character and fitness and his status as a member of our Bar. We note further that this is not Respondent's first brush with professional discipline and that previously he has been publicly reprimanded for violating Disciplinary Rules 1–102(A)(5), 6–101(A)(3), and 7–101(A)(1), (2) and (3) of the *Code of Professional Responsibility. In re Olsen* (1989), Ind., 547 N.E.2d 849.

An examination of the nature of the violation, the specific acts of the Respondent, our responsibility to preserve the integrity of the Bar, and the risk to which the public will be subjected if the Respondent is permitted to continue in the profession, convinces us that disbarment is warranted. It

is, therefore, ordered that William B. Olsen is hereby disbarred.

Costs of this proceeding are assessed against the Respondent.

DeBRULER, J., dissents as to sanction and would impose suspension for a period of three (3) years.